UNITED STATES DISTRICT COURT

OF MASSACHUSETTS

|  |  |
|---|---|
| Rebecca Lodgepoll <br><br> *Plaintiff* <br><br> V. <br><br> Cambridge Police Department, <br><br> City of Cambridge, <br><br> *Defendant* | CIVIL ACTION NO: <br><br><br> **COMPLAINT FOR CIVIL PENALTIES** <br> **AND DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1. This is a civil action seeking damages for violations of 42 U.S.C. § 1983, negligence, and intentional infliction of emotional distress.

2. The Plaintiff was attacked in her front yard on 9/7/2020 by four individuals and suffered internal bleeding, facial fractures, a concussion, and significant swelling/bruising to her eye and face.

3. Plaintiff called the police who responded but refused to take a report from her.

4. All four of the attackers were still on the scene, admitted to beating her up, and justified it to the officers by saying she deserved it.

5. Cambridge Police did not request identification from anyone on the scene, and three of the four attackers have not been identified or charged in the assault.

6. One of the attackers (who was later discovered to be Daryl Hodge) threatened the Plaintiff in the presence of Cambridge PD by screaming multiple times that if he did not get his chain back, he was going to get his gun from his [car] and start shooting "everyone."
7. The Plaintiff did not have his chain, was home with her two children, and was terrified of Daryl Hodge after he had just beaten her and stomped her face into the pavement.
8. The Plaintiff feared for the lives of herself and her children.
9. Cambridge Police after hearing the threats by Mr. Hodge said, "Nothing is going to happen."
10. With the Cambridge Police still at the scene, Daryl Hodge returned to the Plaintiff's property and stood outside the door of her house.
11. Mr. Hodge repeated the threats that if he did not get his chain back, he was going to get his gun and start shooting everyone in the Plaintiff's house.
12. Mr. Hodge stood in front of the Plaintiff's door making threats for a considerable amount of time.
13. One of the other attackers then yelled, "I have it," and Mr. Hodge and the other perpetrators of the assault walked away from the Plaintiff's house.
14. The Plaintiff believed that the statement, "I have it," was about the gun Mr. Hodge said was in his car.
15. The attack, the response by Cambridge Police, and the threats made by Daryl Hodge were captured on video by Plaintiff's 13-year-old nephew.
16. The 10 minutes of video is brutal, horrific, and extremely violent, showing how the 13-year-old boy looked away and could not watch the extreme violence as his aunt got her face stomped into the pavement by Mr. Hodge.
17. Plaintiff made a complaint to the Cambridge Police Department about the officer's conduct and submitted the video.
18. James Mulcahy the Director of the Professional Standards Unit found that "The officers conduct did conform to the standards of conduct and policies and procedures established by the Cambridge Police Department. The finding of this investigation is CLEARED."

## **THE PARTIES**

19. Plaintiff, Rebecca Lodgepoll, resides in Cambridge, Massachusetts and is an enrolled member of the Chippewa Cree Tribe.
20. The Defendant, Cambridge Police Department, is located at 125 6th St, Cambridge, MA 02142.
21. The Defendant, City of Cambridge, is located at 795 Massachusetts Ave, Cambridge, MA 02139.

## JURISDICTION AND VENUE

22. Jurisdiction is proper because the action arises out of a civil rights violation under 42 U.S.C. § 1983.
23. The Plaintiff is a citizen of the Chippewa Cree Tribe, and the Defendant's are municipalities in the state of Massachusetts, and the amount of recovery sought is greater than $75,000.
24. Venue is proper as the assault took place in Cambridge, Massachusetts and the Defendant's are both physically located in Cambridge, Massachusetts.
25. Plaintiff has standing to bring the complaint as she was brutally assaulted, called the Cambridge Police, was threatened with gun violence in the officer's presence, and then had the life of her and her family threatened.

## STATEMENT OF FACTS

26. On June 13th, 2020, Plaintiff was at home and conducted a traditional Native American ceremony at sunrise to mourn the passing of her cousin who died in a tragic car accident along with her husband and their two young children. The ceremony was meant "To bring up the sun for our ancestors to bring them home."
27. Cambridge Police arrived and told the Plaintiff she was in violation of the city noise ordinance, and that she needed to turn her music off immediately.
28. Plaintiff explained that she had a right under the American Indian Religious Freedom Act to perform the ceremony and resumed praying.
29. Cambridge Police were angry and used aggressive language toward Plaintiff but eventually left.
30. Plaintiff called The Cambridge Police Department on July 26, 2020 and asked for assistance with harassing behavior from her neighbors.

31. The neighbor had left before Cambridge Police arrived, and Plaintiff was upset that officers would not file a police report about the harassment.
32. Plaintiff filed a complaint with the Cambridge Police Department for the officer's refusal to document her complaint.
33. On September 7, 2020 The Plaintiff was attacked just after midnight in her front yard by four individuals who were partying at her neighbor's house next store.
34. As one of the attackers who remains unidentified grabbed the Plaintiff's hair and shirt, two other unidentified females struck Plaintiff in the face numerous times.
35. After the beating by the three woman, Daryl Hodge grabbed the Plaintiff and threw her to the ground.
36. Mr. Hodge then struck the Plaintiff with multiple punches to the face, before standing up and stomping her face into the concreate.
37. The blow left a shoe print on the Plaintiff's face.
38. The vicious assault last approximately three minutes and the Plaintiff suffered internal bleeding, facial fractures, a concussion, and significant swelling/bruising to her eye and face.
39. Plaintiff called the Cambridge Police, and the dispatcher was reluctant to send assistance.
40. Plaintiff demanded they come because she was fearful for her safety and her attackers were still present.
41. When the Cambridge Police arrived, they refused to take a report from her.
42. The Plaintiff was pointing at the people who attacked her in the presence of the officers.
43. The officers did not get the identification of the individuals who were present on the scene.
44. All four of the attackers were still on the scene, admitted to beating her up, and justified it to the officers by saying she deserved it. This admission is captured on video.
45. Cambridge Police did not request identification from anyone on the scene, and three of the four attackers have not been identified or charged in the assault.
46. Daryl Hodge then began threatening the Plaintiff in the presence of The Cambridge Police officers.
47. Mr. Hodge screamed multiple times that if he did not get his chain back, he was going to get his gun from his car and start shooting "everyone."

48. The Plaintiff did not have his chain, was home with her two children, and was terrified of Daryl Hodge after he had just beaten her and stomped her face into the pavement. The Plaintiff feared for the lives of herself and her children.
49. Cambridge Police heard the threats by Mr. Hodge and replied, "Nothing is going to happen," and then walked back to their cruisers. The Officers stayed on the scene. This was captured on video.
50. Daryl Hodge then returned to the Plaintiff's property and stood outside the door of her house and repeated the threats that if he did not get his chain back, he was going to get his gun and start shooting everyone in the Plaintiff's house.
51. The Cambridge Police Officers could see this happening and did nothing to intervene.
52. Mr. Hodge continued to stand in front of the Plaintiff's door and stated "I'm not on that type of time, I will sit down in a prison cell, you snap the chain off my neck, that is disrespect. The game goes differently if you snatch the chain off my neck, I will shoot this whole place up."
53. One of the other female attackers who has not been identified then yelled, "I have it," and Mr. Hodge and the other perpetrators of the assault walked away from the front door of the Plaintiff's house.
54. The Plaintiff believed that the statement, "I have it," was about the gun Mr. Hodge said was in his car.
55. Mr. Hodge then starts walking toward the Plaintiff's house again and said, "Let my shit go off."
56. The Plaintiff and her family then jumped on the floor to duck from what they expected to be gunshots coming from outside. The Plaintiff believed that she and her family were about to be murdered by Mr. Hodge.
57. The Cambridge Police were still present on the scene and did not intervene. This allowed Mr. Hodge to threaten the Plaintiff and her family three separate times in their presence.
58. The attack, the response by Cambridge Police, and the threats made by Daryl Hodge were captured on video by Plaintiff's 13-year-old nephew.
59. Two videos combing for a total of 10-minutes are brutal, horrific, and extremely violent, showing how the 13-year-old boy looked away when his aunt was about to get her face stomped into the pavement.

60. The Plaintiff then alerted the Cambridge Police Officers that the assault and their response was captured on video.
61. The Cambridge Police officers quickly took the phone as evidence from the 13-year-old nephew.
62. The Officers then watched the video from the phone as Plaintiff was treated by paramedics.
63. While the Plaintiff was being treated by paramedics, she demanded that the officers arrest Daryl Hodge. The Plaintiff shouted that she was not leaving with the paramedics until she saw him arrested.
64. The Officers then arrested Daryl Hodge.
65. They did not identify the other individuals who were present on the video striking the Plaintiff repeatedly in the face, even though the individuals were still present on the scene.
66. Plaintiff made a complaint to the Cambridge Police Department about the officer's conduct and submitted the video.
67. James Mulcahy the Director of the Professional Standards Unit found that "The officers conduct did conform to the standards of conduct and policies and procedures established by the Cambridge Police Department. The finding of this investigation is CLEARED."

## COUNT 1- CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983, FAILURE TO ADEQUATELY TRAIN

68. The Plaintiff re-alleges and incorporates herein by reference, all of the allegations contained in the preceding paragraphs.
69. The Cambridge Police violated Plaintiff's civil rights by refusing to take a written statement from her when they arrived.
70. The Cambridge Police violated Plaintiff's civil rights by refusing to conduct a preliminary or follow-up investigation when Plaintiff was visibly harmed.
71. The Cambridge Police violated the Plaintiff's civil rights by taking no affirmative action when an individual was repeatedly threatening to get his gun from his car to shoot the Plaintiff and her family in their presence.

72. The City of Cambridge and Cambridge Police failed to adequately train their officers to write reports, and to recognize when they should write a report.
73. The City of Cambridge and Cambridge Police failed to adequately train their officers to conduct preliminary and follow up investigations.
74. The City of Cambridge and Cambridge Police failed to adequately train their officers to not retaliate against individuals who file complaints against officers.
75. The City of Cambridge and Cambridge Police failed to adequately train its Director of the Professional Standards Unit, James Mulcahy.
76. The Cambridge Police refusal to investigate caused three of the attackers to still be unidentified.
77. The Cambridge Police caused the Plaintiff to fear for the life of herself and life of her family as they watched Daryl Hodge repeatedly threaten her on her property.

## COUNT 2- CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983 FAILURE TO ACT

78. The Cambridge Police responded after Plaintiff called the police to report the vicious attack she had just suffered.
79. The Cambridge Police observed Mr. Hodge threaten the Plaintiff and her family in their presence.
80. The Cambridge Police failed to act and allowed Mr. Hodge to repeatedly threaten the Plaintiff and her family with a gun that he said was in his car.
81. The Cambridge Police's presence on the scene and lack of action terrified Plaintiff, as the individual who had broken her face continued to threaten her.
82. The Plaintiff believed the officers were going watch Mr. Hodge retrieve his gun and shoot her and her family and then not intervene.
83. The Cambridge Police's lack of intervention was willful and was meant to terrorize the Plaintiff and her family.

## COUNT 3- NEGLIGENCE

84. The Plaintiff re-alleges and incorporates herein by reference, all of the allegations contained in the preceding paragraphs.
85. The Cambridge Police had a duty to follow standards of conduct and policies and procedures established by the Department.

86. The Cambridge Police had a duty to investigate the assault and battery where injury was clearly visible.
87. The Cambridge Police had a duty to intervene when Daryl Hodge said he was going to get his gun from his car and start shooting.
88. The Cambridge Police had a duty to use reasonable care to prevent further harm to the Plaintiff while they were present.
89. The Cambridge Police had a duty to get the identification of the individuals they witnessed on video assaulting the Plaintiff when they were still present.
90. The Cambridge Police breached their duty by refusing to take a report from the Plaintiff despite her blood-soaked clothes and swollen face.
91. The Cambridge Police breached their duty by allowing Daryl Hodge to repeatedly threaten the Plaintiff and her family with a gun on her property while they were present.
92. The Cambridge Police caused the Plaintiff to fear for her life and the life of her family through their lack of intervention.
93. The Cambridge Police caused the Plaintiff to believe they were not going to intervene even after Daryl Hodge got his gun and killed her.
94. The Cambridge Police's failure to identify the women they observed on video assaulting the Plaintiff has prevented her from a civil recovery for the medical bills.

## COUNT 4- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

95. The Plaintiff re-alleges and incorporates herein by reference, all of the allegations contained in the preceding paragraphs.
96. The Cambridge Police acted intentionally and recklessly when they failed to take a report from the Plaintiff.
97. The Cambridge Police acted intentionally and recklessly when they failed to investigate the vicious assault after individuals admitted that they had beaten the Plaintiff.
98. The Cambridge Police acted intentionally and recklessly when did not intervene when Daryl Hodge threatened the Plaintiff with a gun in their presence.
99. The Cambridge Police acted intentionally and recklessly when they did not request identification from the individuals who they observed beat the Plaintiff on video.
100. The Cambridge Police's conduct was extreme and outrageous as they repeatedly observed Daryl Hodge threaten the Plaintiff and her family with a gun over his chain.

101. The Cambridge Police knew that the Plaintiff would be terrified of the threats, as she had just told the officers that Daryl Hodge had just beaten her and stomped on her face.
102. The Cambridge Police knew that the Plaintiff would be terrified if Daryl Hodge threatened her in their presence and they did not intervene.
103. The Cambridge Police intended for the Plaintiff to be terrified and allowed the threats because they were mad that the Plaintiff previously complained about officers within the department.
104. The distress was the most severe type: an immediate fear that the Plaintiff and her family were about to be murdered.
105. The distress was so severe that the Plaintiff and her family believed that they were about to be shot and got on the ground to avoid gunshots.

## **PRAYERS FOR RELIEF**

WHEREFOR the Plaintiff requests a jury trial on all triable issues and asks the court:

A. To enter a judgement against the City of Cambridge and Cambridge Police Department for a civil rights violation under 42 U.S.C. § 1983 for failure to adequately train.
B. To enter a judgement against the Cambridge Police Department for a civil rights violation under 42 U.S.C. § 1983 for failure to act.
C. To enter a judgement against the Cambridge Police Department for negligence and intentional infliction of emotional distress.
D. Award reasonable attorney's fees and costs for the costs of litigation.
E. Order such other relief that the Court deems just and proper.

Respectfully submitted,

Rebecca Lodgepoll

By her attorneys,

By: *[signature]*

Andrew R. Burger, Esq. Bar #706458
Law Office of Andrew R. Burger
48 Elm St #1
Andover MA,
603-344-8955
Andrew.Ryan238@gmail.com

## Certificate of Service

I hereby certify that the foregoing Complaint was sent to Defendants by certified mail on June 17, 2021 to:

Cambridge Police Department at 125 6th St, Cambridge, MA 02142.

City of Cambridge at 795 Massachusetts Ave, Cambridge, MA 02139.

                                                   /s/ Andrew R. Burger

                                              Andrew Burger, Esq./Bar #706458